**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| UNITED STATES OF AMERICA and ) <br> PEOPLE OF THE VIRGIN ISLANDS, ) <br> ) <br> v. ) <br> ) <br> SHANGO ALLICK, ) <br> ) <br>           **Defendant.** ) <br> ) | Criminal Action No. 2011-020 |

**Attorneys:**
**Alphonso G. Andrews, Jr., Esq.,**
St. Croix, U.S.V.I.
    *For the Government*

**Jeffrey B. C. Moorhead, Esq.,**
St. Croix, U.S.V.I.
    *For the Defendant*

### MEMORANDUM OPINION DENYING DEFENDANT'S APPEAL OF THE MAGISTRATE JUDGE'S DETENTION ORDER

**Lewis, District Judge**

THIS MATTER comes before the Court on Defendant Shango Allick's Appeal of the Magistrate Judge's August 23, 2011, Detention Order. (Dkt. No. 14).[1] Defendant appeals his order of detention on the grounds that it allows for his detention at Guaynabo Metropolitan Detention Center in Puerto Rico, which, he argues, effectively deprives him of his Sixth Amendment right to counsel. For the reasons discussed below, the Court denies Defendant's appeal.

---
[1] All docket references are to Criminal Action No. 2011-020 unless otherwise specified.

## I. BACKGROUND

As alleged in an affidavit in support of the criminal complaint in this matter, on July 28, 2011, the Virgin Islands Police Department performed a traffic stop on the vehicle driven by Defendant because it had no front license plate and excessively tinted windows. It is further alleged that during the traffic stop, officers discovered that Defendant had been consuming marijuana while operating the vehicle. When subsequently fleeing the scene of the traffic stop on foot, Defendant allegedly dropped a loaded handgun and a bag containing a loaded magazine, marijuana, cocaine, and drug packaging material. He was later arrested for firearm and drug offenses. (*See* Aff. in Supp. of Crim. Compl., Dkt. No. 3-1). At the time of his arrest, Defendant was on supervised release while awaiting sentencing on a March 2011 felony conviction for money laundering. (*See* March 30, 2011 Jury Verdict as to Shango Allick, Criminal Action No. 2007-042, Dkt. No. 400; Release on Bond (Undertaking), Criminal Action No. 2007-042, Dkt. No. 406).

On August 17, 2011, Defendant made an initial appearance before this Court, at which time counsel was appointed to represent him. At a detention hearing held on August 23, 2011, the Magistrate Judge ordered that Defendant be detained pending his trial. (*See* Detention Order, Dkt. No. 10). The Magistrate Judge determined that, based on the circumstances surrounding Defendant's arrest, including his attempt to flee and the fact that he was on supervised release at the time, no conditions of release could reasonably assure the safety of the community and Defendant's appearance at later proceedings in this case. *Id*. at 4-7. The Magistrate Judge ordered that Defendant be "committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving

sentences or being held in custody pending appeal" and that he "be afforded reasonable opportunity for private consultation with counsel." *Id*. at 7. The Attorney General of the United States, acting through the United States Marshal, placed Defendant at the Metropolitan Detention Center in Guaynabo, Puerto Rico ("MDC Guaynabo") while he awaits his trial in this Court.

On August 25, 2011, Defendant filed a "Notice of Appeal" of the Magistrate Judge's August 23, 2011 Detention Order. (Dkt. No. 14). Although the notice of appeal included a copy of the Detention Order, it did not specify which portion(s) of the Detention Order were objectionable, nor did it contain any argument or citation to authority in support of the relief requested. On September 28, 2011, the Court issued an order requiring Defendant to file a supporting brief or face dismissal of his appeal. Defendant filed a supporting brief on October 4, 2011 (*see* Def.'s Br., Criminal Action No. 2011-mj-012, Dkt. No. 22), and the Government filed its response on October 12, 2011 (*see* Gov.'s Br., Dkt. No. 26).

## II. DISCUSSION

### A. Applicable Legal Principles

Under 28 U.S.C. § 636(b)(1)(A) and Fed. R. Crim. P. 59(a), a district court reviews a magistrate judge's ruling under the clearly erroneous or contrary to law standard. A factual finding is clearly erroneous when it "either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data." *Haines v. Ligget Group Inc*., 975 F.2d 81, 92 (3d Cir. 1992) (quoting *Krasnov v. Dinan*, 465 F.2d 1298, 1302 (3d Cir. 1972)). Under the "contrary to law" standard, the district court has "plenary review as to matters of law." *Id.* at 91. A ruling is "contrary to law if the

3

Magistrate Judge misinterpreted or misapplied the applicable law." *Benjamin v. Esso Standard Oil Co.*, 2009 WL 2601439, at *2 (D.V.I. Aug. 18, 2009).

In appealing the Magistrate Judge's Detention Order, Defendant argues that his confinement at MDC Guaynabo in Puerto Rico violates his Sixth Amendment right to counsel.[2] "[P]retrial detainees have a constitutionally protected right to the effective assistance of counsel." *Cobb v. Aytch*, 643 F.2d 946, 957 (3d Cir. 1981). Accordingly, "inmates must have a reasonable opportunity to seek and receive the assistance of attorneys. Regulations and practices that unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts are invalid." *Procunier v. Martinez*, 416 U.S. 396, 419 (1974). Pretrial detention conditions may violate the Sixth Amendment when "they unreasonably burden[] the inmate's opportunity to consult with his attorney and to prepare his defense," *Benjamin v. Fraser*, 264 F.3d 175, 187 (2d Cir. 2001) (evaluating constitutionality of restrictions placed on attorneys visiting clients at Rikers Island), or when they result in the "actual or constructive denial of the assistance of counsel altogether." *United States v. Lucas*, 873 F.2d 1279, 1280 (9th Cir. 1989) (quoting *Perry v. Leeke*, 488 U.S. 272, 280 (1989)).

When a Sixth Amendment claim is based on alleged inconvenience caused by the distance between a court and a pretrial detention facility, courts have required defendants to show that access to counsel was actually or constructively deprived, or that defendant was prejudiced, in order to sustain the claim. For example, in *Lucas*, the Ninth Circuit found that a

---

[2] The Magistrate Judge's Order does not require, but also does not prohibit, Defendant's confinement at MDC Guaynabo in Puerto Rico, although it *does require* that Defendant "be afforded reasonable opportunity for private consultation with counsel."

defendant's pretrial detention in a facility 120 miles away from his court-appointed counsel did not violate his Sixth Amendment right to counsel:

> Lucas's pretrial detention in a facility located two hours distant from the place of his trial did not prevent all communications between client and counsel. Lucas and his counsel were free to communicate by telephone; alternatively, Lucas's counsel could easily endure the inconvenience of a two-hour drive to Phoenix. And in any event, Lucas communicated freely with his counsel following a day of pretrial motions held in Tucson. We thus believe that his detention in the facility located in Phoenix rather than the one in Tucson did not amount to the actual or constructive denial of the assistance of counsel for which a showing of prejudice is not required.

873 F.2d 1279, 1280-81 (9th Cir. 1989); *see also United States v. Argraves*, 2010 WL 283064, at *5 (D. Conn. Jan. 22, 2010) (finding no violation of right to counsel when defendant, facing charges in Connecticut district court, was detained in Rhode Island detention center approximately 110 miles away from his counsel because "this level of inconvenience does not amount to a denial of effective assistance of counsel."); *United States v. Echeverri*, 1992 WL 81876, at *2 (E.D.N.Y. Mar. 31, 1992) (finding no violation of right to counsel when defendant was detained at facility 100 miles outside of Eastern District of New York because "the distance to the Otisville facility may inconvenience defense counsel, but it does not deprive defendant of his right to a reasonable opportunity to consult with counsel."); *cf. Cobb*, 643 F.2d at 951 (finding violation of right to counsel when there was evidence that detainees missed interviews with counsel and court appearances because of detention in facilities hundreds of miles away from court).

A defendant bears the burden of establishing that he has been deprived of the effective assistance of counsel. *Premo v. Moore*, 131 S. Ct. 733, 739 (2011). Here, Defendant has failed to meet his burden.

B. **Analysis**

Defendant appeals the Magistrate Judge's ruling on Sixth Amendment grounds.[3] According to Defendant, the time and expense required for an in-person visit from his counsel, traveling from St. Croix, Virgin Islands, effectively deprives him of his right to counsel. Specifically, Defendant contends that flights between St. Croix and Puerto Rico are difficult to acquire, especially at the last minute or during holidays and the winter season, and that once in Puerto Rico, it is difficult to get to MDC Guaynabo from the airport because it is "virtually inaccessible by public transportation." Defendant acknowledges that taxi service to MDC Guaynabo is available but costs $45 to $55 each way, and renting a car "is very time consuming." Defendant further claims that his counsel will have to spend "a minimum of $500.00 (per visit) and sometimes require an overnight stay in Puerto Rico" which is an additional "$300 per night this time of year [October 2011] subject to availability." (Def.'s Br. at 2-3).

Defendant further argues that MDC Guaynabo's visitation and security policies exacerbate this inconvenience. Defendant asserts that MDC Guaynabo does not allow attorney visits before 5:00 p.m. on Wednesdays and "prefers that legal visits take place on Mondays and Tuesdays." *Id*. at 3. Additionally, according to Defendant, the detention center restricts when inmates are made available to meet with their attorneys, including during "two daily counts"

---

[3] In his appeal, Defendant does not challenge the Magistrate Judge's finding that no conditions of release would reasonably assure the safety of the community and Defendant's appearance at future proceedings in this case. Nonetheless, in its opposition to Defendant's appeal, the Government devotes a considerable portion of its argument to that issue. The Court will not address the Magistrate Judge's finding in that regard because it has not been challenged by Defendant in his appeal.

(one at 10 a.m. and one at 4 p.m.), such that "if an Attorney plans to visit in the afternoon, he/she must be inside the institution before 3:00 p.m. and may not leave between 3:30 p.m. or 3:45 p.m. and whenever count clears, usually around 5 p.m." *Id.* [4]

Defendant has not met his burden of demonstrating that the distance and alleged inconvenience of travel to and from MDC Guaynabo faced by his attorney has effectively deprived him of his Sixth Amendment right to counsel. First, Defendant has not shown that he has been prevented from meeting with his counsel or that his detention at MDC Guaynabo has interfered with his legal proceedings. To the contrary, Defendant has had the opportunity to meet with his counsel at least twice on St. Croix – once at his detention hearing and once at a hearing on Defendant's motion to continue the trial date. *See Lucas*, 873 F.2d at 1280-81 (the fact that defendant was given the opportunity to confer with counsel "following a day of pretrial motions held in Tucson" mitigated against deprivation of counsel claim). Further, the Government represents that Defendant "can be brought to St. Croix well in advance of trial as is always the case for every defendant charged federally in this district . . . ." (*See* Gov.'s Br. at

---

[4] MDC Guaynabo's visiting policies are published in its "Unit Admission & Orientation Booklet 2010," which is also available on its website at:
http://www.bop.gov/locations/institutions/gua/index.jsp (last visited Jan. 5, 2012). Page 11 of the Booklet contains a section entitled "Legal Visits" which states:

> Attorneys and their authorized representatives (Refer to 28 CFR Chapter V, Section 543)[] will visit from 8 a.m. to 8 p.m., every day except Wednesdays, in which attorneys may visit before 11 a.m. or after 5 p.m. The legal visits for designated inmates will take place on Mondays. The Attorney Advisor or the Institution Duty Officer may approve a legal visit before 8 a.m. or after 8 p.m., if staff are available to supervise the visit and the attorney can demonstrate a pressing need to see the inmate. Video/Audio equipment will be made available upon request. Legal visits will be processed into the visiting room until forty-five (45) minutes before the beginning of an official count. Legal visitors will not be allowed to enter or leave the visiting room while an official count is in progress.

6).[5] Similarly, there is no indication that Defendant has missed hearings or that his legal proceedings, or his ability to participate therein, have otherwise been adversely impacted by his confinement in Puerto Rico. *Cf. Cobb,* 643 F.2d at 951 (finding violation of right to counsel when there was evidence that transferees missed court appearances and interviews with counsel because of pretrial detention in facilities hundreds of miles away from court).

Second, Defendant has not shown that the alleged inconvenience faced by his attorney unreasonably burdens his right to counsel. The practice of law (as well as many other occupations) on St. Croix, Virgin Islands, occasionally, if not frequently, requires off-island travel—whether it be to a hearing on the sister island of St. Thomas, a deposition in Florida, consultation with a client in Puerto Rico, or otherwise. *See, e.g., Burt v. General Acc. Ins. Co.*, 2003 WL 23413622, at *2 (D.V.I. Dec. 21, 2003) (denying motion to transfer case from St. Croix to Puerto Rico and finding inconvenience to Puerto Rican witnesses minimal because of "the short distance between Puerto Rico and the Virgin Islands and the frequency of airline service between the two islands");[6] *see also Borghi v. Purple Group, Inc.*, 2009 WL 1404752, *4 (D.V.I. May 15, 2009) (denying motion to transfer case from St. Thomas to St. Croix and rejecting argument that St. Croix defendant would be prejudiced by having to travel from St. Croix to St. Thomas).

---

[5] The Court is aware that many defendants under pretrial detention orders issued by this Court are detained at MDC Guaynabo while awaiting trial.

[6] Puerto Rico is considered to be within the 100–mile radius of this court's subpoena power. *Burt*, 2003 WL 23413622, at * 2. Luis Munoz Marin International Airport in San Juan, Puerto Rico is 94 miles from Henry Rohlsen Airport in St. Croix. *See* http://www.distance-calculator.co.uk/airport-information.php?as=STX&ad=SJU (last visited January 5, 2012); http://www.world-airport-codes.com/dist/?a1=stx&a2=sju (last visited January 5, 2012).

While Defendant claims that it is difficult to obtain flights between Puerto Rico and St. Croix, publicly available data indicates that for the week of October 2, 2011, through October 8, 201, there was an average of 10 flights per day from St. Croix to Puerto Rico, with 4-5 of those flights leaving St. Croix before 10 a.m.[7] During that same week, there was an average of 12 daily flights from Puerto Rico to St. Croix, with 4 flights leaving San Juan after 4 p.m., and the latest flight leaving at 7:20 p.m.[8] In addition, defense counsel's complaints, in effect, that he

---

[7]   *See* http://www.flightstats.com (last visited January 5, 2012). Courts have judicially noticed the historical existence of flights under Federal Rule of Evidence 201(b). *See Boller v. National Mediation Bd.*, 647 F. Supp. 1060, 1062-63 (S.D. Tex. 1986) (taking "judicial notice of the difference in flight times between New York to Washington and New York to Houston and the relative frequency of flights on these two routes"); *Robine v. Commissioner of Internal Revenue*, 1986 WL 21554, at *1, n. 1 (T.C.M. (P-H) Aug. 5, 1986) (taking "judicial notice of the fact that in 1980 there were no direct flights from Detroit, Michigan, to Alaska."). Courts have also judicially noticed facts retrieved from the Internet when those facts were not the subject of reasonable dispute. *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007) (reversing district court for failing to take judicial notice of online historical retirement fund earnings data and noting that "[i]t is not uncommon for courts to take judicial notice of factual information found on the world wide web."); *Kurschinske v. Meadville Forging Co.*, 2008 WL 4462294, at *5 (W.D. Pa. Sept. 30, 2008) (a district court can take judicial notice of the travel time between cities based on internet mapping services); *Grimes v. Navigant Consulting, Inc.*, 185 F. Supp. 2d 906, 913 (N.D. Ill. 2002) (taking judicial notice of published stock prices found on the Internet). Accordingly, the Court takes judicial notice of the existence of flights between St. Croix and San Juan for the week of October 2-8, 2011 and December 19-26, 2011 (*see* n.8, below).

[8]   The week of October 2nd was selected as example because it was the week when Defendant filed his memorandum in support of his appeal. However, that week is not unique as it relates to the availability of flights between St. Croix and Puerto Rico. Flightstats.com data also shows that for the week of December 19-26, 2011, which falls during both "the holidays" and the "winter season" about which Defendant complains regarding the availability of flights (Def.'s Br. at 2), there was an average of 21 daily flights from St. Croix to San Juan, with 5-6 of those flights leaving St. Croix before 10 a.m. During that same week, there was an average of 22 daily flights from Puerto Rico to St. Croix, with 6-8 flights leaving San Juan after 4 p.m., and the latest flight leaving at 8:30 p.m. *See* http://www.flightstats.com (last visited January 5, 2012).

may have to engage in some advance planning to avoid difficulty in getting flights "at the last minute or during holidays and the winter season" (Def's Br. at 2), or that he may have to take a taxi or rent a car in Puerto Rico instead of relying on public transportation (*id*.) do not rise to the level of inconvenience that constitutes an unreasonable burden on Defendant's right to counsel. *See Lucas*, 873 F.2d at 1280; *Argraves*, 2010 WL 283064, at \*5; *Echeverri*, 1992 WL 81876, at \*2.

Third, Defendant has not demonstrated that the costs associated with his counsel's travel to and from MDC Guaynabo have actually or constructively deprived him of access to his counsel. While Defendant's court-appointed counsel may have to advance the costs associated with traveling to MDC Guaynabo, many, if not all of those costs (including his time spent traveling, if reasonably incurred) are reimbursable under the Criminal Justice Act, 18 U.S.C. § 3006 *et seq*. *See* 18 U.S.C. § 3006A(d)(1) ("Attorneys may be reimbursed for expenses reasonably incurred . . . ."); *see also* 18 U.S.C. § 3006A(d)(5) (outlining procedures for reimbursement).

Finally, Defendant has not shown that MDC Guaynabo's policies unreasonably burden or deny his opportunity to consult with counsel. *See Lucas*, 873 F.2d at 1280-81; *Benjamin*, 264 F.3d at 179. The Government represents that Defendant has access to a telephone at MDC Guaynabo (s*ee* Gov.'s Br. at 6) and Defendant does not argue to the contrary. *See Lucas*, 873 F.2d at 1280-81 (considering it relevant to Sixth Amendment claim that defendant was able to communicate with his counsel by phone). Further, based on Defendant's representations, the daily counts at MDC Guaynabo occur at the same time each day and can therefore be taken into consideration by Defendant's counsel when planning his visits. *Cf. Benjamin*, 264 F.3d at 179,

187 (finding that defense attorneys faced "unpredictable, substantial delays" when visiting their clients at Rikers Island and that those delays were not the result of "institutional security regulations" supported "a continuing need for prospective relief to correct an ongoing denial of a federal right . . . ."). That Defendant's counsel can make arrangements to minimize any delay caused by MDC Guaynabo's security procedures militates against a finding of a Sixth Amendment violation.

In sum, Defendant has failed to make the requisite showing to establish that his pre-trial confinement at MDC Guaynabo in Puerto Rico constitutes a violation of his Sixth Amendment right to counsel.[9]

---

[9] In his conclusion, Defendant makes a passing reference to other arguments not discussed in his memorandum, asserting that his detention at Guaynabo is "cruel and unusual punishment," and that the detention order is "too broad" and allows the Attorney General to "choose to illegally confine Defendant anywhere in the world." Defendant further claims that "[a]ll other District Courts in the United States Order the confinement of pretrial detainees in the same district in which they are charged." (Def.'s Br. at 4-5). These arguments, to which Defendant simply alludes without developing, lack merit.

To prove that conditions of confinement are cruel and unusual, "a plaintiff must demonstrate that prison conditions deprived him of life's minimum necessities, that the deprivation was sufficiently serious, and that 'a prison official acted with deliberate indifference in subjecting him to that deprivation.'" *Renchenski v. Williams*, 622 F.3d 315, 338 (3d Cir. 2010) (quoting *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir.1997)). Defendant has fallen far short of satisfying this burden. Further, the Magistrate Judge's Order does not permit Defendant's confinement *anywhere in the world* because the Order expressly states that he "be afforded reasonable opportunity for private consultation with counsel." In any event, Defendant has no standing to contest whether the Magistrate's Order permits him to be confined *anywhere in the world* because he is being confined in Puerto Rico, which the Court has determined does not violate his Sixth Amendment right to counsel. *Pennsylvania Prison Soc. v. Cortes*, 508 F.3d 156, 162 (3d Cir. 2007) ("[F]ederal courts sit solely to decide on the rights of individuals and must refrain from passing upon the constitutionality of an act unless obliged to do so in the proper performance of our judicial function, when the question is raised by *a party whose interests entitle him to raise it*.") (emphasis in original) (citations omitted). Finally, Defendant's claim that all pretrial detainees are confined in the same district in which they are charged is factually

## III.  CONCLUSION

While Defendant's pretrial detention at Guaynabo MDC in Puerto Rico is less convenient for Defendant and his counsel than detention on St. Croix, Defendant has not satisfied his burden of demonstrating that it violates his Sixth Amendment right to counsel.  Accordingly, the Court **DENIES** Defendant's Appeal of the Magistrate Judge's August 23, 2011 Order.  An appropriate Order accompanies this Opinion.

Date: January 5, 2012                                         _____/s/_____
                                                                              WILMA A. LEWIS
                                                                              District Judge

---

incorrect. *See, e.g., Argraves*, 2010 WL 283064, at *5 (finding no violation of right to counsel when defendant, facing charges in Connecticut district court, was detained in Rhode Island detention center approximately 110 miles away from his counsel); *United States v. Parker-Taramona*, 778 F. Supp. 21, 23 (D. Hawaii, 1991) (finding no Sixth Amendment violation where pretrial detainees awaiting trial in Hawaii district court were detained in San Diego due to bed shortage in Hawaii detention facilities).