# DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA and<br>PEOPLE OF THE VIRGIN ISLANDS,<br><br>        v.<br><br>SHANGO ALLICK,<br><br>        Defendant. | Criminal Action No. 2011-020 |

**Attorneys:**

**Alphonso G. Andrews, Jr., Esq.,**
St. Croix, U.S.V.I.
    *For the Government*

**Allan John Baptiste, Esq.,**
St. Croix, U.S.V.I.
    *For the Government*

**Jeffrey B. C. Moorhead, Esq.,**
St. Croix, U.S.V.I.
    *For the Defendant*

## **MEMORANDUM OPINION**

**Lewis, District Judge**

      THIS MATTER is before the Court on Defendant's "Motion for Continuance of Jury Trial Scheduled for February 21, 2012," which was filed on February 16, 2012. (Dkt. No. 63). The Government filed an opposition on the same day (Dkt. No. 62), and a hearing on this matter was held on February 17, 2012. For the reasons that follow the Court will grant in part and deny in part Defendant's Motion.

## I. BACKGROUND

As alleged in an affidavit authored by Officer Donnell Samuel of the Virgin Islands Police Department ("VIPD") in support of the criminal complaint in this matter, on July 28, 2011, Officer David Stevens, Jr., of the VIPD performed a traffic stop on a vehicle driven by Defendant because it had no front license plate and excessively tinted windows. (*See* Aff. in Supp. of Crim. Compl., Dkt. No. 3-1). Officer Stevens and his partner smelled marijuana as they approached the vehicle and soon discovered that Defendant had been consuming marijuana while operating the vehicle. In the course of fleeing the scene of the traffic stop, Defendant dropped a loaded handgun and bags containing marijuana and cocaine. *Id*. Defendant was arrested several weeks later and subsequently indicted for federal firearm and drug violations. (*See* Indictment, Dkt. No. 22). His trial originally was scheduled for November 7, 2011 (Dkt. No. 24), but was continued on Defendant's motion. (Dkt. No. 36). On November 15, 2011, Defendant's trial was rescheduled for February 21, 2012. (Dkt. No. 38).

During a February 14, 2012 telephone conversation between the Assistant United States Attorney responsible for this case and Defendant's counsel, the Assistant United States Attorney stated that Officer Stevens had been involved in the January 5, 2012, shooting death of Kendall Petersen, Jr., which occurred during the execution of a search warrant in Fredericksted, St. Croix, and that he was the subject of "an ongoing internal affairs investigation." In response, in a February 14, 2012 email string that was read into the record at the hearing on this matter, Defendant's counsel requested "a copy of Officer Stevens' entire personnel and internal affairs file" pursuant to Rule 16.1 of the Local Rules of Criminal Procedure. The email explained:

> Officer Stevens is the only officer who identified Mr. Allick. No latent fingerprints or DNA were recovered linking any evidence to Mr. Allick. Officer Stevens also alleges that he had a conversation with the person he identifies as Mr. Allick. The internal affairs investigation of Officer Stevens, once concluded, will reveal information which will reasonably bear on Officer Stevens' ability to observe, perceive or relate events, affect his credibility and could reasonably bear on Officer Stevens' credibility for truthfulness. In short, Officer Stevens' credibility, his ability to observe and relate events and his propensity for using excessive force while making an arrest are at issue. These are the same issues that are the subject of Officer Stevens' ongoing internal affairs investigation. Mr. Allick is entitled to cross examine Officer Stevens on these issues.

Defendant's counsel also expressed his intent to ask the Court for a continuance of the trial so that he could obtain the results of the investigation, once completed, and use it at trial. In response to this email, the Assistant United States Attorney replied that "[t]he internal affairs investigation has nothing to do with this case, we can proceed while its pending."

On February 16, 2012, Defendant filed the instant motion seeking a three-month continuance of his trial. The grounds for the requested continuance are that, on February 14, 2012, Defendant's counsel learned that Officer Stevens was involved in the January 5, 2012, shooting of Kendall Petersen, Jr., and that Officer Stevens "is the subject of several ongoing internal affairs investigations one of which was initiated by a fellow police officer." (Dkt. No. 63 at 3). Defendant requests a three-month continuance to allow sufficient time for the Internal Affairs investigation into the Petersen shooting to conclude so that if there is a finding of misconduct or untruthfulness, he can seek to use the information to impeach Officer Stevens. *Id*. at 4.

In its opposition, the Government acknowledges its obligation to produce exculpatory information in its possession, but claims that it "has no actual knowledge or cause to know of the existence of *Brady* or *Giglio* material regarding Officer Stevens or any of the officers involved in

3

this case." (Dkt. No. 62 at 4). In support of this contention, the Government includes a "Giglio Checklist," signed by Officer Stevens on *December 27, 2011*, which states, *inter alia*, that: 1) he is not the subject of pending allegations of misconduct; 2) he has never had a complaint filed against him alleging specific instances of misconduct concerning truthfulness; and 3) he has never received a finding of misconduct relating to his truthfulness from any agency.[1]

At the February 17, 2012 hearing, Defendant elaborated on his claim that the Internal Affairs investigation was material to his defense. Defendant's counsel represented that, after speaking with several individuals, he learned that the Internal Affairs investigation involved the issue of whether Officer Stevens had made a false report concerning the January 5, 2012 incident. Specifically, Defendant's counsel stated that, although he had not seen Officer Stevens' report, he was told that it contained the allegation by Officer Stevens that on January 5, 2012, Petersen had a weapon in his hand, was told to drop it, refused, and was subsequently hit with a single bullet "at some distance." When questioned as to the source of his belief that Officer Stevens had made these allegations, Defendant's counsel acknowledged that he had not seen and was not aware of any specific report made by Officer Stevens, but stated that his belief came from a press release issued by the VIPD on the day of the incident. Defendant did not produce a copy of the press release at the hearing. The Court's review of the VIPD website revealed one press release regarding the incident in question, dated January 8, 2012 (three days after the incident), which states, in pertinent part:

---

[1] The *Giglio* Checklist provided by Officer Stevens is dated December 27, 2011, ten days before the January 5, 2012 incident, and thus does not, on its face, resolve the issue of whether the investigation files concerning the January 5, 2012 incident contain any *Giglio* material.

4

> The officers entered into the Frederiksted residence at about 6:30 a.m. and began securing the inside of the home while other officers began securing the outside perimeter including the back yard area. Officers on the outside of the home observed a male individual exiting the home carrying a firearm. Police ordered the individual several times to stop, however, the individual ran around the corner of the building, doubled back and began advancing toward the police officers. Officers again ordered him to stop however the individual continued advancing on officers. Police fired one shot which hit the suspect in his upper body . . . A semi automatic hand gun was recovered from the rear of the building. A waist holster which was located near the firearm was also taken into police custody . . . . Internal Affairs agents have launched a Use of Force Investigation into this shooting in addition to the investigation conducted by the Investigation Bureau which is standard procedure. The officer involved has been placed on administrative leave with pay pending further investigation into the shooting. The case remains active and open.

See http://www.vipd.gov.vi/Public_Interest/Press_Releases/Show_Press_Release/12-01-08/Police_Execute_Search_Warrants_One_Person_Dead.aspx (last visited February 21, 2012).

Defendant's counsel also stated that he had been informed by the attorney representing Petersen's family that an autopsy report indicated that the bullet that killed Petersen entered the top of his head at close range and that Petersen's knees and knuckles were dirty, suggesting that Petersen was kneeling when he was shot. Defendant's counsel explained that there is an apparent inconsistency between Officer Stevens' version of the events (which counsel implies can be gleaned from the press release) and the autopsy report (the substance of which counsel has not seen and has only second-hand knowledge). From this Defendant's counsel infers that the Internal Affairs investigation into the shooting involves ascertaining whether Officer Stevens was truthful regarding the events surrounding the shooting of Petersen.

In response, the Government argued that Defendant had offered nothing more than "mere speculation" in support of his claim that the Internal Affairs investigation would reveal impeachment material, and that, in any event, information about the Internal Affairs

5

investigation was inadmissible at trial because it was "ongoing" and there has been no finding of misconduct or untruthfulness.

## II. DISCUSSION

### A. Applicable Legal Principles

In *Brady v. Maryland*, 373 U.S. 83 (1963), "the Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Riley v. Taylor*, 277 F.3d 261, 300 (3d Cir. 2001) (citation omitted). "Evidence that may be used to impeach may qualify as *Brady* material." *Id*. (citing *Kyles v. Whitley*, 514 U.S. 419, 445 (1995) and *United States v. Bagley*, 473 U.S. 667, 676 (1985)). Impeachment evidence falls within the *Brady* rule when the reliability of a given witness may be determinative of the defendant's guilt or innocence. *Giglio v. United States*, 405 U.S. 150, 154 (1972).

*Brady* and *Giglio* may require the disclosure of impeachment material contained in the personnel files of testifying law enforcement officers. *United States v. Dent*, 149 F.3d 180, 191 (3d Cir. 1998). When a defendant has made the requisite showing necessary to trigger a search of the files, "the government need only direct the custodian of the files to inspect them for exculpatory evidence and inform the prosecution of the results of that inspection, or, alternatively, submit the files to the trial court for in camera review." *Id*.

Local Rule of Criminal Procedure 16.1(a) creates a mechanism by which a defendant can obtain *Brady* material contained within the personnel files of law enforcement officers involved in a case:

> Upon request of the Defendant who articulates a *reasonable basis* for the belief that a particular law enforcement officer's personnel and/or internal affairs file may contain discoverable information . . . . The United States Attorney for the District of the Virgin Islands must request that the Attorney General of the Virgin Islands search for and review all personnel and internal affairs files of such local, non-federal, law enforcement personnel, past or present, and report the results of such search and review to the United States Attorney, or directly to the District Court as provided by this rule. The report must contain the substance of all disciplinary reports; citizen complaints; departmental and/or agency complaints including any disposition; medical and/or psychological information which could reasonably bear on the officer's ability to observe, perceive or relate events, or which could affect such officer's creditability; positive drug and/or alcohol testing results; criminal charges whether prosecuted or not; the substance of all internal affairs investigative files including all allegations and dispositions; all misconduct, complaints and reports; any other acts and information, whether substantiated or not, which could reasonably bear on the officer's credibility or character for truthfulness. If the Attorney General or the United States Attorney believes that portions of the information contained in the report should not be disclosed, either one or both may request a protective order under Federal Rule of Criminal Procedure 16(d)(1).

LRCr 16.1(a) (emphasis added). Further, Local Rule of Criminal Procedure 16.1(c) provides:

> If a search and review of records conducted under subsection (a) reveals nothing to be disclosed, the United States Attorney must file a statement including the following information: that a search was conducted, the extent of the search, the existence of any protective order, and that there is no information not subject to a protective order that is material to the preparation of the defense.

LRCr 16.1(c).

## B. Analysis

As evident from the parties' arguments discussed above, the key question here is whether the Defendant has articulated a "reasonable basis" for his belief that the Internal Affairs and Investigation Bureau files regarding Officer Stevens contain "discoverable information." If he has provided a "reasonable basis," the United States Attorney would then be required to request the Virgin Islands Attorney General to search for and review the relevant Internal Affairs and Investigation Bureau files of Officer Stevens, who would then report the results back to the United States Attorney, or directly to the Court in accordance with Local Rule 16.1. LRCr 16.1(a). If reported to the Government, the Government must then produce that report to Defendant or, if it believes that portions of the information contained in the report do not "reasonably bear on the officer's credibility or character for truthfulness," or should not otherwise be disclosed, it may produce the report to the Court for an *in camera* review. Either the Attorney General or the United States Attorney may seek a protective order under Federal Rule of Criminal Procedure 16(d)(1). *Id*. If the search and review of the records reveal nothing, the Government must file a statement indicating that a search was done, the extent of the search and that nothing material to the preparation of the defense was found. LRCr 16.1(c).

In the similar context of obtaining an *in camera* inspection of law enforcement personal files to determine whether the information contained therein should be disclosed to the defendant under *Brady*, the Third Circuit has held that "[a] defendant seeking an in camera inspection to determine whether files contain *Brady* material must at least make a "plausible showing" that the inspection will reveal material evidence . . . Mere speculation is not enough." *Riley v. Taylor*, 277 F.3d 261, 301 (3d Cir. 2001) (citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 58 n.15 (1987)

8

and *United States v. Navarro*, 737 F.2d 625, 631 (7th Cir.1984)). Indeed, absent some articulable reason beyond "mere speculation," courts have routinely denied defendants' requests for access to police personnel files in various contexts. *See, e.g., United States v. Lafayette*, 983 F.2d 1102, 1106 (D.C. Cir. 1993) (denying disclosure of personnel files in motion for new trial because "nothing in appellants' brief informs us why they have any reason to believe that the personnel files would provide any useful evidence whatsoever."); *United States v. Andrus*, 775 F.2d 825, 843 (7th Cir. 1985) ("Mere speculation that a government file may contain Brady material is not sufficient to require a remand for in camera inspection, much less reversal for a new trial.") (quoting *United States v. Navarro*, 737 F.2d 625, 631 (7th Cir. 1984)).

In *United States v. Brooks*, the D.C. Circuit addressed the issue of what is required to trigger the Government's obligation to review an internal affairs investigation report concerning its "chief witness." 966 F.2d 1500, 1501 (D.C. Cir. 1992). There, Officer Hoyle testified at the defendant's first trial, which resulted in a conviction. *Id.* Six weeks later, she "was fatally shot in the apartment of a fellow officer . . . evidently with her own service revolver." *Id*. Later, and without knowledge that the witness had died, the trial judge ordered a new trial based on other grounds. Before the start of the second trial, the defendant requested the police files relating to the death of the law enforcement witness, arguing that "a police officer shot with her own revolver in the presence of a fellow officer might have had some sort of problem that would bear on her credibility." *Id*. The trial court denied that motion, and defendant was convicted at a second trial, based largely on the testimony of the deceased witness from the first trial, which was read into the record. *Id*.

In remanding the case back to the court with instructions that the Government search through homicide and Internal Affairs Division files for exculpatory information undermining Hoyle's credibility, the D.C. Circuit noted that "pure speculation" was insufficient to trigger the Government's obligation to search through a law enforcement officer's personnel files, but found that the "suggestions here carry the case enough beyond pure speculation (though just barely)." *Id*. at 1504. The Court reasoned:

> We recognize that the probability is low that any of the police department files will yield information drawing Ms. Hoyle's credibility into question. She was a victim of a violent death, quite possibly either suicide or homicide, and we cannot embrace the idea that mendacity is materially more common among such victims than among the population at large. Taking this above the range of utter speculation, however, are the presence of a fellow officer, plus the possible use of her service revolver. The combination suggests some link between the death and her work, and thus (by extension) to some trouble connected with her work.

*Id*. at 1503. The Court concluded:

> As has proved true of the other aspects of *Brady* jurisprudence, no formula defining the scope of the duty to search can be expected to yield easily predicted results. Where, as here, however, there is an explicit request for an apparently very easy examination, and a non-trivial prospect that the examination might yield material exculpatory information, we think the prosecution should make the inquiry. As the burden of the proposed examination rises, clearly the likelihood of a pay-off must also rise before the government can be put to the effort.

*Id.* at 1504. [2]

Here, the showing made by Defendant that the Internal Affairs and Investigation Bureau files may contain exculpatory material is *just enough* to overcome the label of "mere speculation." The press release states that "Police fired one shot which hit the suspect in his

---

[2] In *United States v. Joseph*, 996 F.2d 36 (3d Cir. 1993), the Third Circuit discussed with approval the approach taken by the *Brooks* Court regarding requests to law enforcement to conduct searches for *Brady* material, but distinguished *Brooks* on the basis that Joseph had failed to articulate a sufficiently specific request to warrant relief. *Id*. at 41.

upper body." The autopsy report (which Defendant's counsel has not seen and of which he has only second-hand knowledge) allegedly indicates that Petersen was shot in the head and at close range. Ascribing the content of the police report to Officer Stevens (a "reasonable" inference at this juncture), Defendant contends that the version of events in the press release is arguably inconsistent with the autopsy report, and thus potentially calls into question Officer Stevens' account of the events and bears on his credibility. In view of the inferences that must be made and second-hand accounts that must be accepted, the Court deems it far from clear that the investigation in fact bears on Officer Stevens' credibility. Nonetheless, considering all of the information presented, the Court finds that Defendant has articulated "a reasonable basis" for the belief that the Internal Affairs and Investigation Bureau files may contain discoverable information. LRCr 16.1(a); *Brooks*, 966 F.2d at 1504.

Accordingly, pursuant to Local Rule of Criminal Procedure 16.1, the Court will require the Government to request that the Virgin Islands Attorney General review the Internal Affairs and Investigation Bureau files regarding the January 5, 2012 incident[3] to determine whether they

---

[3] In his Motion, Defendant states that "counsel for Mr. Allick has conducted a preliminary investigation which revealed that Officer David Stevens, Jr. is the subject of several other ongoing internal affairs investigations one of which was initiated by a fellow police officer." (Dkt. No. 24 at 3). At the hearing, Defendant elaborated on the investigation initiated by the fellow police officer and proffered that it involves alleged threats made by Officer Stevens to the fellow police officer's child. No other information regarding this or the other alleged "ongoing internal affairs investigations" was provided by Defendant.

As discussed above, in *Brooks*, the Court allowed the requested search, noting that "there is an explicit request for an apparently very easy examination, and a non-trivial prospect that the examination might yield material exculpatory information . . . . As the burden of the proposed examination rises, clearly the likelihood of a pay-off must also rise before the government can be put to the effort." *Brooks*, 966 F.2d at 1504. Here, Defendant's request for a search through the Internal Affairs and Investigation Bureau files related to the January 5, 2012 incident was specific and supported by a "reasonable basis" that the files would contain information bearing on Officer Stevens' credibility. Accordingly, the Court will grant that request. The request that

11

contain material bearing on Officer Stevens' credibility or character for truthfulness, and to report the results back to the United States Attorney. The United States Attorney must then disclose the report to the Defendant, seek an *in camera* review by this Court, or determine that there is nothing to report. LRCr 16.1(a). If there is nothing to report, the Government must file a statement in conformity with Local Rule of Criminal Procedure 16.1(c).[4] The Government shall have up to and including February 29, 2012, to produce to Defendant or the Court (for an *in camera* review) the report required under Rule 16.1(a), or to file the statement required under Rule 16.1(c). Following resolution of this matter, the Court will schedule a new trial date.

### III. CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Continue Trial. An appropriate Order accompanies this opinion.

Date: February 22, 2012

_____/s/_____
WILMA A. LEWIS
District Judge

---

the Government search through other files, on the other hand, is accompanied by nothing more than "mere speculation" that they contain discoverable information. Defendant offers no basis, let alone a reasonable one, for a belief that the incident involving the alleged threat, or any other incident underlying the "several" alleged investigations, bears on Officer Stevens' credibility. *Joseph*, 996 F.2d at 41 (denying request for *Brady* search because it was a "general request" that "did not ask the prosecutor to make a search of reasonable scope."). Accordingly, the Court will not require the Government to request that the Attorney General search other files.

[4] This Memorandum Opinion should not be read to suggest that the Court finds that any information related to the Internal Affairs and Investigation Bureau investigations of the January 5, 2012 shooting is admissible. The issue of discoverability is separate from that of admissibility. The Court expressly reserves ruling on issues of admissibility.